UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GERMAINE J. GRANT, | ) |
|       Plaintiff, | ) |
|     v. | ) Case No. 11-cv-5611 |
| RELIABLE RECOVERY SERVICES, INC. d/b/a KEY CODE INC.; and SANTANDER CONSUMER USA INC.; | ) Case No. 11-cv-8853 |
|       Defendants. | ) Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiff Germaine J. Grant[1] filed suit against Defendants Reliable Recovery Services, Inc. ("Reliable Recovery") and Santander Consumer USA Inc. ("Santander") on August 17, 2011, amending his complaint on September 13, 2011. Grant alleges violations of the Fair Debt Collection Practices Act and the Illinois Collection Agency Act against Defendants. Grant filed a separate, related complaint against Santander on December 14, 2011, suing Santander for violations of the Telephone Consumer Protection Act, the Fair Debt Collection Practices Act, and the Fair Credit Reporting Act. *See Grant v. Santander Consumer USA Inc.*, Case No. 11-cv-8853.

---

[1] On September 14, 2012, The Executive Committee of the Northern District of Illinois added Grant to its list of restricted filers, determining that "reasonable and necessary restraints must be imposed upon Mr. Grant's ability to file new civil cases in this District *pro se*." *See In the Matter of Germaine Grant*, Case No. 12 C 7359. Cases in existence prior to the entry of that order are unaffected.

Santander filed a Counterclaim on November 1, 2011, alleging counts of conversion, detinue, and breach of contract against Grant and seeking a declaratory judgment that Santander had superior title to a vehicle Grant apparently had in his possession. Santander amended its Counterclaim on February 9, 2012, including a request for injunctive relief to prevent Grant from selling or transferring any interest in the vehicle at issue. Grant's motion to dismiss this Counterclaim was denied on June 20, 2012. Santander also filed a third-party complaint against American Recovery Service Incorporated ("ARS"), seeking an order requiring ARS to indemnify, defend, and reimburse Santander with respect to any liability associated with Grant's complaint.

Now, Santander, joined by Reliable Recovery, moves to dismiss Grant's Complaint pursuant to Federal Rule of Civil Procedure 37, which "provides that where a party fails to obey a court order directing it to provide or permit discovery, the district court may, *inter alia*, enter an order 'dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.'" *Hindmon v. National-Ben Franklin Life Ins. Corp.*, 677 F.2d 617, 620 (7th Cir. 1982) (*Hindmon*) (quoting Fed. R. Civ. P. 37(b)). An identical motion has been filed by Santander in the related action, Case No. 11-cv-8853, and this Memorandum Opinion and Order addresses both motions.

## BACKGROUND

Due to the unusual nature of this case, some background information is useful, based on the pleadings, including all allegations in the Amended Counterclaim filed by Santander, as follows. On or about February 13, 2006, Grant entered into a Note and

Security Agreement with E-Loan, Inc. ("E-Loan") for $12,000.00 for the purchase of a 2001 Ford Excursion Limited, bearing the Vehicle Identification Number 1FMNU43S51EC46251 (the "Vehicle"). (Am. Counterclaim ¶ 3.) Under the terms of the Note, Grant was required to remit sixty monthly payments to E-Loan of $265.81. (*Id.* ¶ 4.) The State of Illinois issued a Certificate of Title for the Vehicle on March 7, 2006. (*Id.* ¶ 5.) E-Loan sold and assigned the Note to CitiFinancial Auto Credit, Inc. ("Citi") on February 7, 2008. (*Id.* ¶ 6.) Santander is the servicing agent for Citi. Citi sent Grant an Amended Agreement on June 22, 2009, seeking to amend and supersede the Note, and require Grant to remit equal monthly payments, beginning on July 22, 2009, of $159.49, to repay the loan he received to purchase the Vehicle. (*Id.*) Grant attempted to revise the Amended Agreement, including by reducing the monthly payment, and returned it to Citi. (*Id.* ¶ 7.)

On September 6, 2010, Santander, acting as Citi's agent, sent Grant a letter, providing Grant with information about his Citi account and how to make payments on the Note. (*Id.* ¶ 8.) Grant failed to remit the required payments to Santander for the Vehicle. (*Id.* ¶ 9.) Third-Party Defendant ARS was retained by Santander to repossess the Vehicle. (*Id.*) ARS repossessed the Vehicle on or about December 22, 2010, after Grant was in default under the Note. (*Id.* ¶ 10.)

Thereafter, instead of completing an Affidavit of Defense, which was provided to Grant in order to explain his basis for why the car should not be repossessed, Santander alleges Grant engaged in a scheme to defraud Santander and recover the Vehicle. (*Id.* ¶¶ 12-13.) According to Santander, Grant created a fictitious release letter to the

American Auto Auction Chicago, where the Vehicle was to be sold, in order to induce the auction company to release the Vehicle to Grant. (*Id.* ¶ 13.) The purported letter contains many grammatical and typographical errors, includes the name of a fictitious law firm, and specifically forbids the auction company from contacting Santander directly. (*Id.*) Based on this letter, Grant was apparently able to recover the Vehicle from the auction company. (*Id.* ¶ 14.) Then, Santander alleges, Grant forged an unknown party's name on the Title's "Release of Lien" and obtained a new Certificate of Title from the Illinois Secretary of State that wrongfully released the E-Loan lien. (*Id.* ¶¶ 15-16.) This new Title listed Grant as the owner of the Vehicle. (*Id.* ¶ 16.) Grant has failed and refused to remit payment to Santander for the Vehicle. (*Id.* ¶ 17.)

As mentioned above, Grant commenced these proceedings against Defendants by filing a Complaint, alleging various violations of the Fair Debt Collection Practices Act and the Illinois Collection Agency Act, and Santander filed its Counterclaim against Grant and its Third-Party Complaint against ARS. Now, Defendants move for a dismissal of Grant's suits pursuant to Fed. R. Civ. P. 37.

## LEGAL STANDARD

Federal Rule of Civil Procedure 37(d)(3) provides that a party's failure to attend its own deposition, answer interrogatories, or respond to a request for inspection may result in the party being subject to sanctions. These sanctions may include: prohibiting the party from supporting or opposing claims or defenses, striking pleadings, dismissing the action in whole or in part, and entering a default judgment against the disobedient party. Fed. R. Civ. P. 37(b)(2)(A). "An entry of a dismissal or default judgment under

4

Rule 37 requires a showing of 'wilfulness, bad faith, or fault' on the part of the non-complying party." *Hindmon*, 677 F.2d at 620 (citations omitted). The choice of an appropriate sanction is the responsibility of the district court and reversed only upon a finding of an abuse of discretion. *Id.*

"Dismissal with prejudice is an extreme sanction." *Robinson v. Champaign Unit 4 School Dist.*, 412 Fed App'x 873, at *4 (7th Cir. 2011). A district court should make an explicit finding of a party's wilfulness, bad faith or fault.

**ANALYSIS**

Grant has repeatedly refused to comply with Defendants' written discovery requests. Grant was served with interrogatories by Santander in September 2012 and failed to provide any response to these interrogatories for several months. (Santander's Mot. ¶ 4.) Grant was also served with a request for production of documents, and Grant's response to this request was "plaintiff have [sic] no such documents." (*Id.* Ex. G.) This response is directly counter to the allegations made by Grant in his Amended Complaint. Reliable Recovery also relates its difficulty with obtaining discovery from Grant; after Reliable Recovery sought to clarify Grant's woefully inadequate discovery responses, Grant replied, "wow your [sic] crying about question [sic] that your [sic] not satisfied with????" (Reliable Recovery's Mot. to Join, Ex. I.) Grant also failed to provide responses to Reliable Recovery's written discovery requests. (*Id.* ¶ 8.)

Santander emailed Grant on February 19, 2013, to determine if Grant had submitted any answers to its written interrogatories. (Santander's Reply ¶ 4.) Grant submitted responses to the written interrogatories, though none of his remarks could

fairly be characterized as responsive. Generally, Grant's remarks avoid answering basic interrogatories, as mentioned above, flatly contradict assertions put forth by Grant in his own Amended Complaint, and propound vague objections such as "objection don't lead to discovery for the defendant . . . ." (*Id.* ¶ 5, Ex. F.) Santander submitted a request to admit to Grant, which stated that "Grant transferred ownership of the Vehicle from himself to King's Development Coalition Institution." (*Id.* Ex. C, ¶ 5.) Grant eventually denied this statement. (*Id.* Ex. H, ¶ 5.) Grant's denial of this statement contradicts the Certificate of Title, indicating a transfer of the title of the Vehicle from Grant to King Development Coalition Institution. (*Id.* Ex. H-1.) *See* Fed. R. Evid. 201(b)(2). Grant's refusal to properly respond to written discovery makes it virtually impossible for Defendants to properly present a defense to Grant's claims.

Grant's conduct was especially egregious regarding Defendants' attempts to depose Grant. Santander first served on Grant its Notice of Deposition on Grant on October 1, 2012. (Santander's Mot. ¶¶ 1-2, Ex. A.) The deposition was scheduled for November 13, 2012, however, Grant insisted, in response to a request for confirmation via email, that he would not attend the deposition. (Santander's Mot. ¶ 2, Ex. C.) Grant never appeared for a deposition at that time. (*Id.* ¶ 4.)

Grant was finally ordered by the Court to appear for a deposition on March 5, 2013, at 10:00 a.m. (Dkt. No. 124.) Grant appeared at this subsequently scheduled deposition, but, as relevant portions of the transcript of this deposition indicate, he was obstinate, defiant, and, at times, directly contradictory to his own previous responses to questions, such that the Court was contacted by phone and was required to

intervene and order Grant to respond to questions in good faith. (Santander's Supp. Mem., Ex. A.) Despite the Court's intervention, Grant has failed to properly comply with Defendants' discovery requests. His misconduct in this regard frustrated the discovery process and made it impossible for Defendants to prepare and present a defense to Grant's claims. As a direct result, Defendants were unable to acquire even the most basic information to challenge the allegations in Grant's Complaint.

Considering the nature and breadth of Grant's misconduct during both the written and oral discovery requested of him, it is clear that he acted intentionally and not in good faith. Dismissal of his Complaint pursuant to Rule 37 is appropriate. Moreover, Grant's behavior has significantly prejudiced Defendants in their ability to defend themselves in the suits filed against them by Grant. While less drastic sanctions might be considered, Grant's behavior throughout this discovery process is appropriately characterized as willful, and his actions (and omissions) with regards to discovery were taken in bad faith. *See Long v. Steepro*, 213 F.3d 983, 987 (7th Cir. 2000) (citations omitted). Accordingly, these sanctions are necessary.[2]

---

[2] This is not the first time Grant's behavior in this District has resulted in sanctions. *See Grant v. Ltd. Financial Services I, Inc.*, Case No. 11 C 5073, 2012 WL 6568241 at *1-2 (N.D. Ill. Dec. 17, 2012) (Judge Zagel holding that "Grant has acted in bad faith in his pleadings and filings in the court.").

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss [114] pursuant to Fed. R. Civ. P. 37 is granted. Due to Grant's failure to act in good faith in the course of discovery, his Complaint is dismissed with prejudice in this case, as is his related case against Santander, Case No. 11-cv-8853.

Date: March 21, 2013

_____
JOHN W. DARRAH
United States District Court Judge